UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO.    CR-05-0109-WFN |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | ORDER |
| | ) | |
| DAMON JOHN HEINTZ, | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the Court is Defendant's Motion to Dismiss the Indictment, filed September 9, 2005, Ct. Rec. 29. Defendant is charged with being in possession of a firearm while subject to a protective order. *See* 18 U.S.C. § 922(g)(8). Defendant argues that the Indictment must be dismissed because the protective order which forms the basis for his firearms disability was not issued after a hearing for which the Defendant received "actual notice" and "an opportunity to participate." *Id*. For the reasons discussed below, the Court grants the Defendant's motion.

## I. BACKGROUND

On or about December 16, 2004, the Defendant was involved in an encounter with Amanda Elliot at a Yakima nightclub. It is alleged that the Defendant pulled Ms. Elliot's hair, shoved her, and kicked her car. It is further alleged that Ms. Elliot is the Defendant's ex-girlfriend. On or about January 14, 2005, the City of Yakima charged the Defendant with assault and malicious injury to property based on the December 16, 2004 encounter.

On February 18, 2005, the Defendant appeared before Yakima Municipal Court Judge Susan Woodard for an arraignment on the assault and malicious injury complaint.

ORDER - 1

1   Defendant's attorney on that matter, George Colby, stipulated to probable cause for
2   arraignment purposes, but specifically denied the existence of a domestic relationship
3   between the Defendant and Ms. Elliot.[1]

4       Judge Woodard then asked the prosecutor whether the city wanted a no-contact order.
5   *See* Transcription of [Arraignment] Proceedings, at p. 3.  The prosecutor answered in the
6   affirmative.  Judge Woodard did not allow the defense to respond; instead, she commented
7   that such an order would be "standard procedure with this type of accusation."  *Id.*  The no-
8   contact order was entered and Judge Woodard explained that it prohibited the Defendant from
9   coming within 500 feet of Ms. Elliot.  The order also imposed a firearms disability, although
10  that component was not specifically highlighted during the arraignment.  Judge Woodard
11  further informed the parties that the no-contact order would not be reviewed pretrial unless
12  the city was in agreement.  *See id*. at p. 3-4.

13      On March 11, 2005, the Defendant was found in possession of two firearms.  On
14  May 25, 2005, a federal grand jury indicted the Defendant in a one-count Indictment which
15  charges a violation of 18 U.S.C. § 922(g)(8).  The basis for the federal charge is the
16  February 18, 2005 Yakima Municipal Court no-contact order.

17                               **II. DISCUSSION**

18      A.  **Relevant Statute.**  The Defendant is charged with violating 18 U.S.C. § 922(g)(8).
19  The statute provides, in part, that it shall be unlawful for any person to... possess in
20  or affecting commerce, any firearm or ammunition, or to receive any firearm or
21  ammunition which has been shipped or transported in interstate or foreign commerce, where
22  such person:

23  _____

24      [1]Defendant's attorney in the federal proceedings also denies the existence of a domestic
25  relationship between the Defendant and Ms. Elliot (i.e., Ms. Elliot does not qualify as an
26  "intimate partner" as it is defined by 18 U.S.C. § 921(a)(32)).

ORDER - 2

is subject to a court order that–
     (A) was issued after a hearing of which such person received **actual notice**, and at which such person had an **opportunity to participate**;
     (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
     (C) (i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury . . .

18 U.S.C. § 922(g)(8) (emphasis added).

    **B.  <u>Preliminary Matters.</u>**  As a preliminary matter, the Court must consider whether notice and opportunity to participate are properly raised in a pretrial motion.  "A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue."  FED. R. CRIM. P. 12(b)(2).  "A motion to dismiss is generally capable of determination before trial if it involves questions of law rather than fact."  *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993) (internal quotation and citation omitted).  "Although the court may make preliminary findings of fact necessary to decide the legal questions presented by the motion, the court may not invade the province of the ultimate finder of fact."  *Id*. (same).

    Here, both the Defendant and the Government agreed that the factual record is complete and that the motion is ripe for decision.  The Court therefore deems it appropriate to determine at this stage of the proceedings whether the February 18, 2005 Yakima Municipal Court protective order can form the basis for a §922(g)(8) charge.  *See e.g.*, *United States v. Herron*, 45 F.3d 340 (9th Cir. 1995) (upholding the dismissal of a felon in possession charge because the defendant's civil rights on the underlying felony had been restored); *United States v. Banks*, 339 F.3d 267 (5th Cir. 2003) (deciding issues of notice and

ORDER - 3

1    opportunity to participate in a pretrial motion where Government consented to a pretrial

2    resolution).

3        **C.  <u>Analysis.</u>**  The Ninth Circuit has not yet defined the concepts of "actual notice" and

4    "opportunity to participate" as they are used in 18 U.S.C. § 922(g)(8).  The Court therefore

5    looks to the reasoning of the Fifth, Sixth, Seventh, and Eighth Circuits, each of which has

6    considered the issues before this Court.

7        The mere fact that a protective order may be enforced does not bring in within the

8    scope of 18 U.S.C. § 922(g).  *United States v. Spruill*, 292 F.3d 207, 218 (5th Cir. 2002)

9    (opining that a TRO issued without notice to the defendant could not form the basis for a

10   §922(g)(8) charge).  However, when actual notice is given by first serving the Defendant with

11   an *ex parte* restraining order, and the Defendant appears at a scheduled hearing where the

12   presiding judge is "prepared to listen to both sides of the dispute" and "decide [the matter]

13   impartially," the resulting no-contact order is within the purview of §922(g)(8).  *United States*

14   *v. Banks*, 339 F.3d 267, 271 (5th Cir. 2003).

15       The  Sixth Circuit has observed that § 922(g)(8) requires no less than due process.  *See*

16   *United States v. Calor*, 340 F.3d 428, 431 (6th Cir. 2003) (*quoting*, *among other authorities*,

17   *Mathews v. Eldridge*, 424 U.S. 319 (1976), and *Cleveland Bd. of Educ. v. Loudermill*, 470

18   U.S. 52 (1985)).  The protective order at issue in *Calor* was an emergency TRO, first issued

19   on February 9, 2001.  340 F.3d at 429.  A hearing was set for February 12, 2001 to determine

20   whether the order should be extended.  *Id.*  Mr. Calor obtained counsel to appear at the

21   February 12, 2001 hearing and request a continuance.  *Id.*  The state judge granted a

22   continuance, but issued a second emergency restraining order to cover the intervening time

23   period.  *Id.*  The defendant was found in possession of a firearm two days later on

24   February 14, 2001.

25       The *Calor* court held that the protective order that was in place after the February 12,

26   2001 hearing formed the basis for a federal firearms disability.  *Calor*, at 431.  The court

ORDER - 4

reasoned that the defendant received notice when he was served with the first TRO on February 9, 2001, and that he had the opportunity to participate, but declined to do so, at the February 12, 2001 hearing. *Id*.

The *Calor* court relied on the Seventh Circuit's reasoning in *United States v. Wilson*, 159 F.3d 280 (7th Cir.1998). In *Wilson*, the defendant was subject to a protective order issued during divorce proceedings. *Id*. at 284. The defendant in *Wilson*, like the defendant in *Calor*, had advance notice of the proposed action when he was served with the initial emergency restraining order. *Id*. at 290. The defendant in *Wilson* was also afforded an opportunity to participate in a "meaningful manner" because at the scheduled follow-up hearing, the defendant was allowed to present reasons, either in person or in writing, as to why the order should not be entered. *Id; see also United States v. Lipman*, 369 F.3d 1039, 1042 (8th Cir. 2004) (defendant received actual notice and an opportunity to participate because he appeared before a judge on the appointed day and time, and the judge was prepared to hear evidence on the restraining order).

In the matter *sub judice*, the Government argues that Mr. Heintz received actual notice of the hearing because he received notice of the arraignment. Because this was a domestic violence allegation, the Yakima Municipal Court was required under Washington law to determine whether a co-contract order should be issued. R.C.W. 10.99.040(3) ("At the time of arraignment the court shall determine whether a no-contact order shall be issued or extended."). The Government therefore contends that since the Defendant was represented by an attorney at the arraignment, that attorney, and by extension the Defendant, had actual notice that the judge would be deciding whether to issue a no-contact order.

The Government's argument is contrary to the reasoning in the case law discussed above. In each of the cases where the court held that the protective order created a federal firearms disability, the defendant had notice of a hearing where the specific issue of a no-contact order would be considered at the hearing. *Banks*, 339 F.3d at 270-71 (defendant

ORDER - 5

advised in open court of a hearing set for the consideration of the protective order); *Wilson*, 159 F.3d at 290 (defendant had advance notice of the proposed action when he was served with the initial temporary restraining order); *Calor*, 340 F.3d at 431 (same); *Lipman*, 369 F.3d at 1042 (defendant received actual notice of hearing on protective order). The Government's argument is also contrary to the Ninth Circuit's interpretation of what constitutes notice in other criminal contexts. *See e.g.*, *United States v. Williams*, 291 F.3d 1180, 1192-93 (9th Cir. 2002) (discussing the timing and nature of the notice required under Fed. R. Crim. P. 32).

In addition, even if the Court were to find that the Defendant received actual notice of the hearing where the no-contact order was entered, he was not afforded a meaningful opportunity to participate. The record before the Court establishes that the first time the Defendant was advised that a protective order would be issued was at the arraignment itself. *See* Transcript of [Arraignment] Proceedings, at 3. Although the Defendant stipulated to probable cause for arraignment purposes (while reserving the issue of a domestic relationship), there is nothing in the transcript that would demonstrate that Judge Woodard was prepared to hear from the Defendant or defense counsel on the subject of the protective order. To a certain extent, Judge Woodard precluded the possibility of any meaningful opportunity for the Defendant to be heard on the protective order by advising the Defendant that the order would not be reviewed pretrial unless the city was in agreement. The Defendant was therefore not afforded a meaningful opportunity to participate during the hearing. *Banks*, at 271 (defendant given the opportunity to present evidence); *Calor*, at 431 (defendant had the opportunity to participate at scheduled hearing but declined to do so); *Wilson*, at 290 (defendant had an opportunity to participate in a "meaningful manner" because he was allowed to present reasons, either in person or in writing, as to why the order should not be entered); *Lipman*, at 1042 (defendant afforded opportunity to participate because the judge was prepared to hear evidence on the restraining order).

### III. CONCLUSION

Under the rule of lenity, any ambiguity in a criminal statute must be construed in favor of the defendant. *Jones v. United States*, 529 U.S. 848, 858 (2000). 18 U.S.C. § 922(g)(8)(A) prohibits a person from possessing a firearm if he or she is subject to a protective order that was issued after a hearing of which such person received "actual notice," and at which, such person had an "opportunity to participate."  The Fifth, Sixth, Seventh, and Eighth Circuits' interpretation of "actual notice" and "opportunity to participate" is a reasonable one.  Mr. Heintz was not given actual notice prior to the arraignment of the proposed action.  He also was not afforded an opportunity to participate, i.e., to present reasons, either orally or in writing, as to why the no-contact order should not issue.  Therefore, the February 18, 2005 no-contact order cannot form the basis for a federal firearms disability.  Accordingly,

**IT IS ORDERED** that:

1.  Defendant's Motion to Dismiss, filed September 9, 2005, **Ct. Rec. 29**, is **GRANTED**.

2.  The Indictment, **Ct. Rec. 1**, is **DISMISSED without prejudice**.

3.  All other pending motions are **DENIED AS MOOT** with right to renew if the Indictment is reinstated.

The District Court Executive is directed to file this Order and provide copies to counsel **AND TO** the United States Probation Office.

**DATED** this 31st day of October, 2005.


_____s/ Wm. Fremming Nielsen_____
WM. FREMMING NIELSEN
SENIOR UNITED STATED DISTRICT JUDGE

10-28

ORDER - 7